IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD PARA, | : | CIVIL ACTION NO. **3:CV-06-2432** |
| | : | |
| Plaintiff | : | |
| | : | Magistrate Judge Blewitt |
| v. | : | |
| | : | |
| CITY OF SCRANTON, | : | |
| WILLIAM J. FIORINI and | : | |
| CHRIS A. DOHERTY, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM and ORDER**

**I. Background**.

On December 12, 2006, the Plaintiff, Richard Para, filed this civil rights action pursuant to 42 U.S.C. §1983 alleging a violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States. (Doc. 1).  On March 9, 2006, the Defendants, the City of Scranton, William J. Fiorini, Director of the Department of Licensing and Permits for the City of Scranton, and Mayor Chris A. Doherty, filed their Answer to Plaintiff's Complaint and asserted affirmative defenses to his claims. (Doc. 5).

The parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

On December 7, 2007, the Defendants filed a Motion for Summary Judgment along with their Statement of Undisputed Material Facts ("SMF").  (Doc. 24, 25).[1]  The Defendants also

---

[1]A May 30, 2007 scheduling conference was held and an order was issued setting case deadlines.  (Doc. 18).  Subsequently, the Court held a status conference on July 18, 2007, and

submitted exhibits (Doc. 25-2, pp. 1-55) with their SMF.  On December 12, 2007, the Defendants filed their Brief in Support of their Motion for Summary Judgment. (Doc. 28).   On December 21, 2007,  Plaintiff filed his Motion for Summary Judgment, his Undisputed Material Facts, and his Answer to the Defendants' SMF.  (Docs. 29, 30, and 31).  Plaintiff also submitted exhibits (Doc. 30, Ex. A-I) with his SMF.  On January 11,2008, the Plaintiff filed his Brief in Support of his Motion for Summary Judgment. (Doc. 34).  Defendants filed their response to the Plaintiff's SMF on February 1, 2008. (Doc. 39).

Currently pending before this Court are the cross-Summary Judgment Motions of the Plaintiff and the Defendants **(Docs. 24 and 29)** with respect to the Plaintiff's claims, under § 1983, for violations of his substantive and procedural due process rights under the Fourth and the Fourteenth Amendments.  The Summary Judgment Motions of both parties have been briefed and are ripe for disposition. (Docs. 28 and 34).

## II. Allegations in the Complaint.

The Plaintiff owns real property located at 202-204 Larch Street, Scranton, Pennsylvania. (Doc. 1, p. 3).  Plaintiff alleges that in December 2004, a fire occurred in a building located on his Scranton property. (*Id*).  On December 22, 2004, the Plaintiff was notified by Defendant Fiorini that his property should be razed or rehabilitated. (*Id*. at 4).  The Plaintiff alleges that on July 15, 2005, with respect to a condemnation notice, he filed a request for a hearing with the City of Scranton Department of Licensing, Inspections, and Permits.  (*Id*.). Plaintiff's request for a hearing was

---

the parties agreed that before they conducted further discovery, they would file cross-Summary Judgment Motions, which they indicated may render further discovery moot.  The Court allowed the parties to file cross-Summary Judgment Motions.  (*See* Minute Sheet, Doc. 19).

granted, and he was given a hearing.  At the hearing before the Housing Appeals Board of the City

of Scranton on March 7, 2006, the Board voted to demolish the Plaintiff's building located on his

Scranton property.  (*Id.*).  The Plaintiff alleges that on March 13, 2006, his building was demolished

by the City, and that this action deprived him of his right to appeal the decision of the Review

Board in violation of his civil rights that were guaranteed by the Fourth and Fourteenth

Amendments.  (*Id.* at 5*)*.

In Claim One, the Plaintiff alleges that the destruction of his building by the Defendants

without due process violated his constitutional rights under the Fourth Amendment and Fourteenth

Amendment, and he asserts this claim under 42 U.S.C. §1983.  (*Id.* at 9*)*.  In Claim Two, the Plaintiff

alleges that his substantive due process rights under the Fourteenth Amendment were violated. (*Id.*).

In Claim Three, the Plaintiff alleges that his procedural due process rights under the Fourteenth

Amendment were violated since his building was demolished without notice, a hearing, and in

violation of the Pennsylvania Uniform Construction Code.  Plaintiff avers that he was deprived of

his appellate rights prior to the demolition of his building.  (*Id.*).  In Claim Four, the Plaintiff alleges

that his due process rights under the Fourth Amendment were violated since Defendants summarily

seized and demolished his building without court adjudication and without a search warrant.

Plaintiff avers that this unlawful seizure and destruction of his property deprived him of his right to

income from his property and caused him embarrassment, humiliation and emotional distress.  (*Id.*

at 9-10).

Plaintiff avers that these violations of his constitutional rights and the unlawful taking of his

property entitle him to compensatory damages, including the cost of the loss of property, future loss

of business, embarrassment, humiliation, ridicule, considerable hardship and financial burden.  He

also avers that he is entitled to punitive damages from all of the Defendants, in addition to interest,

costs and attorney's fees.  (*Id.* at 12).

### III. Standard of Review.

A motion for summary judgment may not be granted unless the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment

if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show

that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is

"'genuine' only if a reasonable jury, considering the evidence presented, could find for the

nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the

movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.*

725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id.*

The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions,

answers to interrogatories and admissions on file" designate "specific facts showing that there is a

genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

## IV.  Material Facts.

The Plaintiff and Defendants have both filed Statements of Material Facts. (Docs. 25 and 30). Both parties attached exhibits to their SMF. The Plaintiff and Defendants also filed responses to the other party's SMF. (Docs. 31 and 39). However, Plaintiff's and Defendants' SMF did not fully comply with Local Rule 56.1,M.D. PA., since all of their numbered paragraphs did not reference the evidence in the record to support their facts.[2] Therefore, we shall accept each party's SMF that are supported by the record and that are not disputed by the other party, and we will adopt them as our own herein. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[3]

---

[2]In the future, both counsel are directed to adhere to the Local Rules of this Court. By referencing the record which supports a moving party's SMF, this Court is able to more thoroughly and quickly discern which facts are not in dispute.

[3]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

5

Based on the responses of the parties to each other's SMF, we shall accept as undisputed the SMF contained in Defendants' paragraphs 1, 2, 4[4], 5[5], 6, 7, 8, 10, 11, 12, and 13. (Docs. 25 and 31).  We shall accept as undisputed the following paragraphs in Plaintiff's SMF:  1, 2, 3, 4, 6, 7, 8, 9, 10, 11[6], 12, 13, 19, 20, 21, and 22.[7] (Docs. 30 and 39).  We shall not repeat these undisputed facts specified in the SMF of the parties.[8]

This Court will now address the following contested statements of material fact in the Defendants' SMF:

Paragraph 3, we find as an undisputed fact that on December 6, 2004, the Scranton Police were dispatched to the Plaintiff's building located at 206 Larch Street for juveniles attempting to enter the vacant building. (Doc. 25, Ex. "B," p. 1).  The police Incident Investigation Report for that incident noted: "Structure is in unsafe conditions . . . . The ceiling in areas was falling down, floor had weak spots, and stairs were weak to walk up, among other possible hazardous features to the

---

[4]There are two paragraphs number 4 in Defendants' SMF.  Since Plaintiff has admitted Paragraphs 4-8 of Defendants' SMF, we find that Plaintiff has not disputed both Paragraphs 4 of Defendants' SMF. (Doc. 25, p. 2).

[5]There are two paragraphs number 5 in Defendants' SMF.  Since Plaintiff has admitted Paragraphs 4-8 of Defendants' SMF, we find that Plaintiff has not disputed both Paragraphs 5 of Defendants' SMF. (Doc. 25, pp. 2-3).

[6]There are two paragraphs 11 in Plaintiff's SMF (Doc. 30, p. 4), and both were admitted by the Defendants. (Doc. 39, p. 2).

[7]There were two paragraphs 22 (Doc. 30, p. 7) in Plaintiff's SMF.  The first Paragraph 22 of Plaintiff's SMF was admitted by the Defendants, and the second paragraph 22 was denied by the Defendants. (Doc. 39, pp. 3-4).

[8]Counsel for both parties are directed to be more careful with respect to the numbering of the paragraphs in their SMF.

structure." (Doc. 25-2, Ex. "B", pp. 1-2).  This Court notes while the officers observed certain aspects of the building that they felt were unsafe, citing to specific problems with the building, they were not building inspectors qualified to classify it as unsafe.  However, the officers notified the communications operator to contact the City Building Inspector about the Plaintiff's building.  The Court also notes that Plaintiff disputes Defendants' Paragraph 3 of their SMF, yet he does not cite to any evidence to refute Defendants' evidence submitted in support of this paragraph.

Paragraph 9, the Defendants do not cite to the record to support the proffered undisputed fact that no repairs were ever made to Plaintiff's property. (Doc. 25, ¶9).  The Plaintiff disputes this fact, and has evidence to support his contention that debris was removed from the property, and that the windows were boarded up prior to the March 7, 2006 Appeal Board Hearing. (Doc. 30, Ex. "G", p. 15).  We find the facts to be undisputed that sometime prior to the March 7, 2006 Housing Appeals Hearing, the Plaintiff's building did have debris removed and the windows were boarded, since these facts are supported by the testimony at the hearing and the letter from the Plaintiff's attorney to Defendant Fiorini, dated January 25, 2006. (Doc. 30, Ex. "D" and Ex. "G", p. 15).  However, we do not find that these steps taken by the Plaintiff to secure his building constitute repairs to the building in terms of fixing any problem with its structure and interior.

Paragraph 14, the Court finds it to be an undisputed fact that the City of Scranton provided the Plaintiff with notice of condemnation as required by Section PM-107[9] of the BOCA Code. (Doc. 30, Exs. "E" and "F").  We also note that the Plaintiff's attorney wrote to Defendant Fiorini and told him that the debris from Plaintiff's building would be removed and the windows would be boarded on Plaintiff's building within fifteen days, and that this was done before the March 7, 2006 Appeal Hearing, as stated above.  (Doc. 30, Ex. "D").

Paragraph 15, the Court finds that Plaintiff is correct and that he first received notification of condemnation from the City on December 22, 2004, not December 22, 2005. (Doc. 25-2, Ex. "E", p. 1).  The Court also finds that it is undisputed insofar as Defendants state that from the time Plaintiff was first notified of condemnation of his building up to the March 13, 2006 demolition of his building, Plaintiff was given ample opportunity to make repairs to his property but there is no evidence that he ever did make repairs. (Doc. 25, ¶ 15.).  As stated above, the steps Plaintiff undisputedly took to "secure" his building clearly did not constitute repairs to the building.  These steps only prevented people from entering the building. (Doc. 30, Ex. G, p. 15).

The Court will now address the following disputed facts in the Plaintiff's SMF (Docs. 30 and 39):

Paragraph 5, the court finds it undisputed that the Plaintiff was the owner of real property situated at 202-204 Larch Street, Scranton, and that there was an apartment in the building on the property (Doc. 30, Ex. "G", pp. 7-8), and that they building was used for storage at the time

---

[9]Section PM-107 of the BOCA Code states when notice of condemnation should be given, the form the notice should take, and the method of service to be used by the City.

relevant to this suit. (Doc. 30, Ex. "G", p. 11).  The Court also finds undisputed that two fires had damaged the apartment building (Doc. 30, Ex. "G"., pp. 3,6,12) and that there was a men's clothing store in the building many years before the relevant time of this case.

(Doc. 30, Ex. "G", p. 11).[10]

Paragraphs 14 and 15, the Court finds the March 7, 2006 Appeals Hearing testimony of Anthony Popple, the owner of A.R. Popple, Inc., which is a demolition, excavation and general construction business, as undisputed.  (Doc. 30, Ex. "G", p. 14).  Mr. Popple testified that the Plaintiff's building was "water tight," the roof was in "fairly good shape," and the majority of the exterior of the building had stucco on it and it was in excellent condition. (Doc. 30, Ex. "G", pp. 14-15).[11]  In addition, we find that Defendants are correct, in that the Plaintiff himself did not appear at the March 7, 2006 Appeals Hearing, but he was represented by his attorney and Mr. Dan Kutchar.  (Doc. 30, Ex. "G", p. 5).

Paragraph 16, the Court find Plaintiff's Paragraph 16 to be supported by the record. (*Id.*, pp. 14-16).  We also find that Mr. Seitzinger, Deputy Director of Safety and Conservation of the City of Scranton, testified at the March 7, 2006 Appeals Hearing as follows:

---

[10]The Court again notes that several of Plaintiff's SMF do not cite to the record, in violation of Local Rule 56.1, M.D. Pa. (Doc. 30).

[11]Mr. Popple also testified that the Plaintiff's building was secure, it was boarded up, and its structure was in good condition. (Doc. 30,Ex. G, pp. 14-16).  There is also no dispute that the debris from the building was cleaned up. (*Id.*, pp. 15-16).

> As the [Plaintiff's] property stands right now, I mean, with two fires and that number of police calls out to that property, it's putting our firefighters, it's putting our policemen, it's putting the people in that neighborhood, it's putting our inspectors, anybody who represents the city who has to deal with properties, it's putting all of us at risk the longer that it stands and the longer that it's up standing on that property. So, we're requesting that the property be razed as soon as possible.

(Doc. 30, Ex. "G." p. 4).

In addition, Mr. Seitzinger testified:

> Mr. Chairman, that [Plaintiff's] property wasn't boarded up until about a month and a half ago, when we ordered for it to be boarded up.
> So, up until that point, that property wasn't a secured property. We had asked for that property to be secured, all windows boarded up and cleaned up.
> Subsequently, that has been done, but the way I look at this property is, like Mr. Fiorini said, that property is, you know, putting our, you know, public servants in danger, and its two blocks away from two different schools.
> You've got Scranton Prep two blocks away, and you got the elementary school down on Capouse Avenue is two blocks away.
> Vacant buildings, blighted properties are attractive to young children. They have a tendency to go in. They're curious. They go into these properties, and what they do in them, we don't know.

(Doc. 30, Ex. "G", pp. 15-16).

The Court also notes that the Plaintiff did not know about the first fire to his building, which occurred in late 2004, shortly before Christmas, until he was notified by the December 22, 2004 letter from the City that condemned his property, which was sent days after the first fire. (Doc. 30, Ex. "A", Ex. "G", p. 5-6).

Paragraph 17, the Court finds this statement of Plaintiff to be undisputed as stated and that the City of Scranton did not provide testimony at the March 7, 2006 Appeals Hearing regarding the structural condition of the Plaintiff's building. (Doc. 30, Ex. "G").

Paragraph 18, the Court finds it to be undisputed that the Housing Appeals Board, on March 7, 2006[12], voted unanimously to demolish the Plaintiff's Scranton property. (Doc. 30, Ex. "G", p. 18).   The Court finds that some of the reasons offered to support the Board's decision were:

> It [Plaintiff's Building] is not only a hazard to the fire company and the police department and the City of Scranton, it's a hazard to these kids, like, the children here this evening, they're looking for places to go.
> A property like this that's neglected, not watched over, and not kept as though someone was living there, it doesn't make sense and it's gone on way beyond a reasonable time.
> As far as someone saying, well, we're waiting on insurance monies or something like that, just doesn't happen.  There are other means of funding a project, especially in the City of Scranton.
> I know there are funds available for people having a hard time who want to maintain their property or keep it in reasonable operating condition.

(Doc. 30, Ex. "G", pp. 17-18).

In addition, some reasons stated in the first condemnation letter (dated December 22, 2004) from the City to Plaintiff dated were:

> [The Plaintiff's] property has been condemned and vacant for some time and to date nothing has been done to rehabilitate this structure. As the years go on, the structure has not been maintained nor kept at a constant temperature.  It is in such disrepair that it is a danger to life, health, and safety to the public and surrounding structures.
> You are well aware that vacant structures are an attractive nuisance to children, a potential fire hazard and a harborage for rodents and insects along with being a potential home for vagrants. Vacant buildings also create a blighting influence within the community.

(Doc. 30, Ex. "A").

---

[12]Both parties incorrectly state the date of the Hearing as "March 7, 2007." (Doc. 30, ¶ 18. and Doc. 39, ¶ 18.).

Finally, the Court finds that the second paragraph 22 of Plaintiff's SMF (Doc. 30, p. 7) is a central fact to the Plaintiff's contention that his right to procedural due process was violated, and this SMF will be addressed below.

**V. Discussion.**

The Court will give a brief summary of the facts as it finds them to be to assist in the following discussion.

The Plaintiff, Richard Para, is the owner of real property located at 202-204 Larch Street, Scranton, Pennsylvania.  (Doc. 25, ¶1). The property had a building on it that was used as an apartment and storage facility for a home care supply company.  (Doc. 25, Ex. "B", p. 1 & Doc. 30, Ex. G.).  On December 18, 2004, a fire occurred at the structure in question that was ruled arson. (Doc. 25, Ex. "C," pp. 1-2). On December 22, 2004, Defendant Fiorini notified the Plaintiff that his property located on 202-204 Larch Street had been condemned and that the Plaintiff had twenty days from the receipt of this letter to make repairs or have the property razed. (Doc. 25, Ex. "E," p. 1).  The Plaintiff, through this letter, received actual notification of condemnation with respect to his property on December 24, 2004. (*Id*. at 2).  This letter also stated that the Plaintiff had twenty days to rehabilitate or raze his building, or to appeal the notice to the Appeals Board by filing a written petition within twenty days of receipt of this letter. (*Id*. at 1).

A second arson fire occurred at Plaintiff's building, which the Fire Department responded to on December 28, 2004. (Doc. 25, Ex. "D").  No further correspondence or action took place until the City of Scranton notified the Plaintiff on July 1, 2005, that his property was

scheduled for demolition due to its dilapidated nature, and that he had twenty days to file for an appeal with the Appeals Board. (Doc. 25, Ex. "F").  Thus, while The City could have demolished Plaintiff's building twenty days after Plaintiff's receipt of the December 22, 2004 condemnation notice letter, it failed to do so.  Instead, they City noticed Plaintiff on July 1, 2005 that his building was scheduled for demolition and that he had twenty days to file an appeal. Thus, The Court finds that the City waived its right to demolish Plaintiff's building twenty days after he received the December 22, 2004 condemnation notice.

On July 15, 2005, the Plaintiff filed a timely Application for a Hearing with the City Housing Board of Appeals. (Doc. 25, Ex. "G"). In a January 25, 2006 letter sent by the Plaintiff's attorney [Joel Wolff] to Defendant Fiorini, the Plaintiff agreed to remove the debris and board the windows of his building within fifteen days. (Doc. 25, Ex. "H").  The Plaintiff's Appeals Board hearing was scheduled for January 25, 2006, but it was rescheduled twice and it was finally held on March 7, 2006. (Doc. 30, Ex. "E" &"F").  Sometime before the hearing, the Plaintiff boarded up the windows and removed some debris from his premises. (Doc. 30, Ex. "G", p. 15).

On March 7, 2006, (after considering testimony) the City Housing Appeals Board voted to unanimously to demolish the Plaintiff's building (Doc. 30, Ex. "G", p. 18), and a demolition order indicating the same was issued the following day (March 8, 2006). (Doc. 30, Ex. "H").  On March 13, 2006, the Plaintiff's building located on his property was demolished by the City of Scranton. (Doc. 30, ¶20).  The Plaintiff filed his instant Civil Rights Complaint on December 19, 2006, basically claiming that they city deprived him of his property in violation of his due

process rights right to appeal the March 7, 2006 Appeals Board decision expired.  (Doc. 1).

Plaintiff has alleged that the Defendants by demolishing his building before his time violated his civil rights under 42 U.S.C. § 1983[13] by acting in an arbitrary and capricious manner in adjudicating that his building should be demolished. (Doc. 1, pp. 9-12).  Plaintiff contends that the Defendants acted, in concert and by themselves, to unlawfully demolish his building, which amounted to a seizure, and precluded his rightful use of his property.[14] (*Id.*)  More specifically, Plaintiff alleges that seizing his property, by its demolition before he had the chance to appeal, deprived him of his appeal rights which are guaranteed by due process of law, and that this conduct by Defendants was in violation of 42 U.S.C. §1983 because:

1. Defendants' actions were arbitrary, capricious and irrational (Doc. 1, ¶15);

2. Defendants were acting under the color of state authority (Doc. 1);

3. Defendants, while acting under the color of state authority, violated the Plaintiff's

---

[13] The Plaintiff, in his Brief in support of his Motion for Summary Judgment, incorrectly states that this action is brought pursuant to 28 U.S.C. § 1983. (Doc. 34, p. 15).  The Court finds that the Plaintiff filed his action pursuant to 42 U.S.C. § 1983, as this statute is mentioned throughout the rest of the Plaintiff's documents and is applicable to the case at hand.

[14] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

14

substantive and procedural due process rights (Doc. 1, ¶17);[15] and

4. As a result of these actions, Plaintiff was damaged since he was deprived of his building and he lost the use of his building (Doc. 1, ¶28).[16]

---

[15]In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981).  *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).


[16]  The Plaintiff can only properly seek punitive damages against the individual Defendants. (Doc. 1).  The Plaintiff is statutorily precluded from recovering punitive damages against the local government, *i.e.*, City of Scranton, and against the individual Defendants in their official capacities, i.e. Fiorini and Doherty.  Plaintiff seeks punitive damages against the individual Defendants in their personal capacities.

The Supreme Court has determined that, absent a statute to the contrary,  punitive damages cannot be awarded against a government entity. *City of Newport  v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748 (1981).  However, this preclusion of a punitive damages remedy does not apply to the individual defendants to the extent they are sued in their personal capacities. *Smith v. Wade*, 461 U.S. 30, 35-36, 103 S.Ct. 1625 (1983). In *Smith*, the Court held that punitive damages may be recovered from individual defendants in certain §1983 cases. The Court also agrees with Defendants that the Plaintiff cannot obtain punitive damages against Defendants Fiorini and Doherty in their official capacities. (Doc. 28, pp. 19-20).  Plaintiff has sued Defendants Fiorini and Doherty in both their personal capacities and official capacities. (Doc. 1, p. 2).  Thus, the Court will grant Defendants' Summary Judgment Motion with respect to Plaintiff's claims for punitive damages as against The City and, as against Defendants Fiorini and Doherty in their official capacities.

In his Summary Judgment Brief, Plaintiff recognizes that he cannot obtain punitive damages from the Defendant City and that he can only seek punitive damages against the two individual Defendants.  Thus, as the Defendants request (Doc. 28, p. 20), the Court will grant Defendants' Summary Judgment Motion with respect to the Plaintiff's claim for punitive damages as against the Defendant City, and as against the individual Defendants in their official capacities.  (Doc. 1, p. 12, ¶ B.).

In support of their Summary Judgment Motion, Defendants first argue that they did not deprive the Plaintiff of any of his procedural or substantive due process rights under the Fourteenth Amendment. Defendants argue that Plaintiff has not shown that they have deprived him of a constitutional right or benefit guaranteed by federal law. (Doc. 28, p. 11). More specifically, Defendants argue that Plaintiff cannot establish any violation of the Constitution or federal law to support his § 1983 claims. The Defendants state that the Plaintiff has alleged two Constitutional violations, substantive and procedural due process claims based on the Fourteenth Amendment, and an unlawful seizure of Plaintiff's building claim based on the Fourth Amendment. The Defendants contend that the Plaintiff's substantive due process claim under the Fourteenth Amendment must fail because it is preempted by the Fourth Amendment's explicit textual source of protection which encompasses a property that is seized or demolished. (Doc. 28, pp. 9-10). The Defendants cite to *Malik v. City of Phila.*, 2007 WL 984455 (E.D. Pa. 2007).

The Plaintiff argues that the City of Scranton violated his substantive and procedural due process rights, in violation of the Fourteenth Amendment, by denying his right to appeal the March 7, 2006 decision of the Hearing Appeals Board that resulted in: 1) the deprivation of his fundamental property interest with respect to his Larch Street building, *Nicolas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d. Cir. 2000); and 2) governmental deprivation of his property interest in a way that was arbitrary or shocks the conscience. *See United Artist Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003). (Doc. 34, pp. 22-23). The Plaintiff also argues that the demolition of his building was an unreasonable seizure

and was prohibited by the Fourth Amendment. (Doc. 34, p. 26). The Plaintiff is relying on

42 U.S.C. § 1983 to assert his stated constitutional claims.

The Defendants note that although the Plaintiff alleged Mayor Doherty was involved in

a conspiracy to violate the Plaintiff's civil rights (Doc. 1, pp. 5-12), there is no evidence that the

Mayor played any personal role with respect to the constitutional violations alleged in this suit.

(Doc. 28, p. 14, n.5).  Initially, the Court agrees with Defendants that there is no evidence of

Defendant Doherty's personal irvalvent with respect to any of Plaintiff's Constitutional claims.

It is well established that personal liability in a civil rights action cannot be imposed

upon a prison official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423

U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976).

 It is also well settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a civil rights case and that a complaint must allege

such personal involvement.  *Id.*  Each named defendant must be shown, through the

complaint's allegations, to have been personally involved in the events or occurrences upon

which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.  See also*

*Sutton v. Rasheed*, 323 F. 3rd 236, 249-250 (3d Cir. 2003).

17

In *O'Connell v. Sobina*, 2008 WL 144199, * 21 (W.D. Pa.), the Court stated:

> Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. *Rode*, 845 F.2d at 1207. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id. See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Moreover, in order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

We find that Plaintiff's Complaint lacks sufficient allegations, and the record lacks any evidence, as to Defendant Mayor Doherty and what this Defendant personally did to violate Plaintiff's Fourth and Fourteenth Amendment rights. Plaintiff has not sufficiently stated, and he has not sufficiently shown, Defendant Mayor Doherty's personal involvement with respect to his Fourth and Fourteenth Amendment claims that he was arbitrarily deprived of his property and that his property was unlawfully seized and demolished. Plaintiff merely alleges, in a vague manner, that "Defendants, City of Scranton, William J. Fiorini, and [Mayor] Doherty, individually and in concert with each other, did act as part of a particular design, plan, and policy with the specific intention to deprive Plaintiff of his civil rights ... ." (Doc. 1, p. 6). The evidence submitted by the parties shows that Defendant Mayor Doherty did not have any personal involvement with the condemnation notice Plaintiff received with respect to his property or with the March 7, 2006 decision to demolish Plaintiff's building. (Doc. 30, Exs. A, G and H). There is not even a showing by Plaintiff that Defendant Mayor Doherty was ever aware that

18

Plaintiff's building was condemned and ordered demolished.   Plaintiff cannot rely upon *respondeat superior* to sue Defendant Doherty in this § 1983 action, as he is attempting to do. *See Sutton, supra*.

Moreover, we find that Plaintiff's vague conspiracy claim as against Defendant Doherty, without any evidence to show that he had an agreement with and acted in concert with Defendant Fiorini and the City to deprive Plaintiff of his Constitutional rights, must be dismissed. The Third Circuit in *Jones v. Maher*, Appeal No. 04-3993 (3d Cir. 2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim.   (Citation omitted).   Also, the United States District Court for the Middle District of Pennsylvania, in *Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), *aff'd*. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993), stated as follows:

> Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.  In *Waller v. Butkovich,* 584 F.Supp. 909, 931 (D.C.N.C. 1984), the district court outlined the pleading requirements in a conspiracy action.
>
>> In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice.  The plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from which such an agreement can be inferred . . . (Citation omitted.) . . .  Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy . . . (Citation omitted.)
>> Additionally, the plaintiffs must make 'specific factual allegations connecting the defendant to the injury' . . . (Citations omitted.) . . .

19

The Plaintiff fails to offer any evidence in support of his conspiracy claim against Defendant Doherty, in that he does not show an agreement between any of the Defendants and the Mayor to deprive Plaintiff of his due process rights under the Fourteenth Amendment. There is no evidence submitted that the supervisory Defendant Doherty played any role in the decision of the Hearing Appeals Board to demolish the Plaintiff's building. We find that Plaintiff's bare conclusory allegations of conspiracy against Defendant Doherty and his complete lack of any evidence to support them are inadequate to establish a conspiracy claim. *See Flanagan, supra.*

Therefore, in the absence of any evidence of personal involvement in this case, Mayor Doherty is entitled to be dismissed from all claims. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior").* Thus, we will grant Defendants' Motion for Summary Judgment regarding all claims asserted against Defendant Mayor Doherty and we will dismiss the Mayor entirely from Plaintiff's case.

A. *Substantive Due Process Claim*

Regarding the claim of substantive process, the Fourteenth Amendment provides, in part, that "no State [shall] deprive any person of life, liberty, or property without the due process of law...." U.S. Const. Amend. XIV, § 1. "To prevail on a substantive due process claim under §1983, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates Ltd. v. W.J. Gretkowski, et al.,*205 F.3d 118 (3d. Cir. 2000). "[A] substantive due process claim

grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a 'particular quality of property interest.'" *Woodwind Estates Ltd.*, 205 F.3d at 122, *citing Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165, 1179 (3d Cir.1997).

The Plaintiff submits that this Court should adopt the "shocks the conscience" standard (Doc. 34, pp. 22-23) that the Eastern District of Pennsylvania used in *The Developmental Group, LLC v. Franklin Twp. Bd. of Supervisors*, 2003 WL 22358440 (E.D. Pa.) at *5, which is stated as follows with respect to a substantive due process claim in a land use dispute:

> . . . Plaintiffs must allege facts demonstrating that the Township's conduct was arbitrary, irrational, or motivated by constitutionally impermissible factors. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590-91 (3d Cir. 1998). In addition, a plaintiff's asserting that a municipal land use decision violated substantive due process must show that the defendants' conduct "shocks the conscience." *United Artists Theatre Circuit, Inc., v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003).
>
> In the very recent *United Artists* decision, the United States Court of Appeals for the Third Circuit, in light of the United States Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.23 1043 (1998), held that the "shocks the conscience" standard applies to substantive due process claims arising out of land use decisions. *United Artists*, 316 F.3d at 402. Prior precedent required plaintiffs to prove merely that a defendant acted with an "improper motive." *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 124 (3d Cir. 2000); *Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir. 1987), or that the defendant's conduct was "improper interference." *See Blanche Road Corp. v. Bensalem Twp.*, 57 F.3d 253 (3d Cir. 1995). Whether the conduct at issue in any particular land use case meets this heightened "shocks the conscience" standard will depend on the facts of the particular case. *United Artists*, 316 F.3d at 399-400.

> The Court of Appeals noted, however, that only the "most egregious official conduct" will rise to the level of a constitutional violation. *Id.* (quoting *Lewis*, 523 U.S. at 846).

The Defendants argue that the Supreme Court does not apply substantive due process under the Fourteenth Amendment for seizures of property so this claim should be dismissed. (Doc. 28, pp. 9-10).  Defendants state that the Plaintiff's Fourth Amendment and Fourteenth Amendment procedural due process claims preempt his substantive due process claim based on the seizure of his property. (*Id.*).  The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).  The Defendants also point out that "[t]he seizure of property implicates two explicit textual sources of constitutional protection, the Fourth Amendment and the Fifth." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). "A seizure occurs when there is a meaningful interferences with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

While the Plaintiff urges this Court to use the "shock the conscience" standard, we agree with Defendants and their contention that Plaintiff's claim under the substantive due process clause of the Fourteenth Amendment is precluded because the procedural Due Process Clause of the Fourth Amendment preempts the Fourteenth Amendment's substantive due process claim in this case.  We agree with Defendants that when a governmental entity demolishes a

22

building, "a 'seizure' results within the explicit meaning of the Fourth Amendment." (Doc. 28, p. 9).  Since the crux of our case is about the City's seizure of Plaintiff's Larch Street building, as both parties admit (Doc. 34, p. 26 and Doc. 28, p. 9).  This claim of Plaintiff is properly brought under procedural due process of the Fourth Amendment *see Armendariz v. Penman*, 75 F.3d 1311, 1319-20 (9th Cir. 1996)(holding that the Fourth Amendment and procedural due process claims preempted substantive due process claims based on seizure of property).[17]

As the Court noted in *El Malik*, 2007 WL 984455, * 7, n. 2:

> We also note that in *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the United States Supreme Court held that "[where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Accord Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  "The seizure of property implicates two explicit textual sources of constitutional protection, the Fourth Amendment and the Fifth." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (noting that the Fourth Amendment applied to the seizure of a four-acre parcel of land with a house); *Soldal v. Cook County, Illinois*, 506 U.S. 56, 70, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (holding that a "seizure . . .  occurs when 'there is some meaningful interference with an individual's possessory interests in that property'") (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)); *Armendariz v. Penman*, 75 F.3d 1311, 1319-20 (9th Cir. 1996) (holding that the Fourth Amendment and procedural process claims preempted substantive due process claim based on seizure of property).  Although Plaintiffs do allege that Defendants acted arbitrarily and oppressively in the demolition of their buildings, their claim fits squarely within the contours of the Fourth Amendment's protections (applicable to the Defendants via the Fourteenth Amendment).  *See Soldal*, 506 U.S. at 61-62.  Where, as here, when the government demolishes a building,

---

[17]Defendants attached a copy of the *El Malik* decision to their Doc. 28 Brief.

a "seizure" results within the explicit meaning of the Fourth Amendment. *See id.; Suss v. ASPCA*, 823 F.Supp. 181, 186-87 (S.D.N.Y. 1993) (holding that the demolition of an outer wall of a private building constitutes a seizure). Accordingly, because Plaintiffs' claim is grounded in an explicit textual source, their substantive due process claim could not proceed even if they did meet the summary judgment burden to come forward with evidence of conscience-shocking conduct.

Therefore, Defendants' Motion for Summary Judgment with respect to Plaintiff's substantive due process claim brought under the Fourteenth Amendment shall be granted, and the Plaintiff's Summary Judgment Motion with respect to this claim will be denied.[18]

B. *Procedural Due Process Claims*

There are two procedural due process claims that the Plaintiff asserts, namely, (1) the Defendants deprived the Plaintiff of the use and enjoyment of his property without the due process of law in violation of the Fourteenth Amendment because the City demolished his building before the appeal period expired (Doc. 34, pp. 15-21), and (2) the City unlawfully seized his Larch Street property by demolishing his building based on the erroneous decision of the Housing Appeals Board in violation of the Fourth Amendment. (Doc. 34, pp. 26-31). The first procedural due process claim brought under the Fourteenth Amendment involves notification and whether there was provided an adequate state law remedy to correct a legal error by an administrative body, *i.e.*, the City's Housing Appeal Board's March 7, 2006 decision. The second procedural due process claim is based on the Fourth Amendment and involves the

_____

[18]We note that even if we applied the shock the conscience test as suggested by Plaintiff, we do not find that the City's demolition of Plaintiff's Larch Street building, which we find was an undisputed dangerous building after the two fires (Doc. 30, Ex. G), pursuant to the City's condemnation procedures and a valid condemnation order, does not shock the Court's conscience. *See El Malik, supra.*

issues of whether the seizure of Plaintiff's property was lawful, whether the Defendants acted in an "emergency" situation, and whether this conduct was part of a municipal policy of the City of Scranton that violated the civil rights of property owners.

### 1. Procedural Due Process under the Fourteenth Amendment

The Plaintiff contends that the procedures given to him to challenge the City's demolition order did not meet the requirements for procedural due process under the Fourteenth Amendment since his property was demolished before his appeal period expired with respect to the March 7, 2006 decision of the Appeals Board. (Doc. 34, p. 16). Plaintiff concedes that he had an adequate remedy under state law, *i.e.*, the BOCA Code, but argues that he was not given a full opportunity to pursue that remedy. Plaintiff avers that the procedural due process provided by the City deprived him of the constitutionally required due process procedures. *Id*. The Defendants dispute Plaintiff's contentions and argue that the notification given to Plaintiff was adequate because the Plaintiff received actual notification of the condemnation of his building on December 22, 2004. (Doc. 25, Ex. E). Defendant Fiorini's December 22, 2004 letter of condemnation to Plaintiff stated, in part, as follows:

> I hereby order that the above referenced structure to either be rehabilitated or razed.
>
> Please be advised that you have twenty days from the receipt of this letter to comply or to appeal as set forth below. Failure to do so will result in the city demolishing the structure and placing a lien on the property for all costs incurred.
>
> If you have any objections to the determination of this office, you may appeal this matter by requesting a hearing before the Appeals Board by filing a written petition requesting a hearing and stating the grounds for the appeal within twenty (20) days

upon receipt of this letter.
(Doc. 25, Ex. E).

Defendants state that Plaintiff took no action after he received Fiorini's letter, *i.e.,* he did not rehabilitate his Larch Street building or file an appeal. (Doc. 28, p. 11).[19]  Defendants state that the City then issued a second notice, about six and one-half months later on July 1, 2005, notifying Plaintiff that his building was scheduled for demolition in the summer of 2005, and that he had 20 days to appeal the notice to the City's Appeals Board. (Dc. 25, Ex. F).  Plaintiff then filed a timely appeal on July 15, 2005, after he received the second notice.  (Doc.2 5, Ex. G).  Plaintiff then had his Housing Appeals Hearing on March 7, 2006, and the demolition order was issued. The Resolution upholding the demolition order was issued March 8, 2006. (Doc. 30, Exs. G and H).  The BOCA Code provided Plaintiff would have time to appeal the March 7, 2006 decision, but his building was undisputedly demolished just six (6) days later on March 13, 2006. (Doc. 30, Ex. I).

Defendants contend that since the Plaintiff did not act until the second notification, the City did not violate Plaintiff's constitutional rights by demolishing his building without giving him time for further appeals. (Doc. 28, p. 11).  The Defendants contend that the notice the Plaintiff received was adequate, because actual notice was given when the Plaintiff received the first letter, sent by Defendant Fiorini, on December 24, 2004. (Doc. 25-2, Ex. E, p. 2).  Defendants maintain that because the Plaintiff received actual notice, there was not a due process violation

---

[19]As stated, the Court does find that Defendants took no action by demolishing Plaintiff's building within twenty days after he received the December 22, 2004 condemnation notice letter.

in regards to notice. (Doc. 28, p. 11). The Defendants state that they were only under obligation to provide "notice that was reasonably calculated to apprise the parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We agree with Defendants that Plaintiff received notice, but the Plaintiff does not contend that inadequate notice was given in violation of the Due Process Clause of the Fourteenth Amendment.

Rather, the Plaintiff's contention is that the Defendants did not afford him adequate procedural due process with respect to his right to appeal the March 7, 2006 decision of the Appeals Board. (Doc. 34, p. 16). To make a procedural due process claim, under § 1983, the Plaintiff must show that the Defendants were acting under the color of law when it deprived the Plaintiff of a protected property interest and that the procedures for challenging the deprivation were inadequate. *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995) overruled on other grounds by *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003).

As the *El Malik* Court stated:

> Procedural due process normally requires that a governmental deprivation of life, liberty or property be preceded by notice and opportunity for a hearing appropriate to the nature of the case. *Logan v. Zimmerman Brush Co.* 445 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).  As there is no real question that the Plaintiff's ownership interest in real property merits the procedural protections of due process of law, *see James Daniel Good Real Property*, 510 U.S. at 49, the only remaining question is whether the Plaintiffs have come forward with sufficient evidence to show constitutionally inadequate notice.

> "Due process does not require that property owner receive actual
> notice before the government may take his property." *Jones v.
> Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 1714, 164 L.Ed.2d 415 (2006).
> What is required is notice "reasonably calculated under all the
> circumstances to apprise interested parties of the pendency of the
> action and afford them opportunity to present their objections."
> *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314
> 70 S.Ct. 652, 94 L.Ed.865 (1950). The notice is "constitutionally
> sufficient if it was reasonably calculated to reach the intended
> recipient when sent." *Jones,* 547 U.S. at ____, 126 S.Ct. at 1714
> (holding that when the state sent notice of a tax sale but it was
> returned unclaimed, it had to take additional reasonable steps
> to attempt to provide notice to the property owner before selling
> the property, if it was practicable to do so).

2007 WL 984455, * 8.

The Defendants contend that the City had the right to destroy the Plaintiff's building without issuing the second notice that his structure was going to be demolished because the original appeal period under the BOCA Code had expired, in January 2005, twenty days after Plaintiff was sent the first notice dated December 22, 2004.  The Defendants argue that since the Plaintiff did not exercise his rights after his initial notice, they were within their rights to demolish his building twenty (20) days after the December 22, 2004 letter. (Doc. 28, p. 11).

The Plaintiff points out that post-deprivation notice can be adequate to satisfy the procedural due process requirements if the state's interest is of an unquestionably strong nature, so much so that the pre-deprivation notice would not insufficiently protect those countervailing interests. *Fanning v. Montgomery County Children and Youth Services*, 702 F. Supp. 1184, 1189 (E.D. Pa. 1988) (citing *Mackey v. Montrym*, 443 U.S. 1 (1979)).

The Court agrees with the Plaintiff that the City of Scranton did not have a strong interest which would require only post-deprivation process due to its finding that the Plaintiff's structure

28

was not an immediate danger to public safety, since the City waited for approximately fifteen (15) months between the time of the first notification (December 22, 2004) and the time of the hearing (March 7, 2006) before taking action with respect to Plaintiff's building. (Doc. 34, pp. 20-21).

It is undisputed that the Defendants were acting under the color of state law with respect to Plaintiff's claim that they unconstitutionally deprived him of his property interest. The Defendants argue that their procedures were adequate since the Plaintiff gave up his right to appeal the decision of the Housing Board by not taking any action after he received the first notice dated December 22, 2004.  The Court agrees with Plaintiff that since Defendants took no action after the first notice was sent and since Defendants sent Plaintiff the second notice and accepted his request for an Appeals Board Hearing, and gave him a hearing, Defendants were then required to comply with the BOCA Code the City adopted, which provided for a thirty-day appeal period after the order from the Appeals Board was issued. (Doc. 28, p. 11). We disagree with Defendants that the Plaintiff gave up his right to appeal by not appealing the first notification that was sent on December 22, 2004.  We concur with the Plaintiff and find that since Section PM-111.7 of the BOCA Code[20] was adopted by the City, Plaintiff had a right

---

[20]  PM-111.7 of the BOCA Code states, "Any person, whether or not a previous party of the appeal, shall have the right to apply to the appropriate court for a writ of certiorari to correct errors of law.  Application for review shall be made in the manner and time required by law following th filing of the decision in the office of the chief administrative officer." (Doc. 30, Ex. I).

to appeal the Appeals Board's March 7, 2006 decision until April 6, 2006.[21]  (Doc. 34, p. 19).

Thus, we find that Plaintiff's Fourteenth Amendment procedural due process rights were

violated because his building was destroyed on March 13, 2006, and he was not given his full

appeal period to challenge the Defendants' decision to demolish his structure. (Doc. 34, pp. 17-

19).  Once Defendants sent Plaintiff the second notice of demolition in July 2005 and allowed

Plaintiff to request a hearing, it was incumbent on Defendants to have given Plaintiff the full

panoply of his administrative rights, including his appeal rights, before his building could be

demolished.

Therefore, the Court will grant Plaintiff's Summary Judgment Motion with respect to his

Fourteenth Amendment procedural due process claim.[22]

### 2. Procedural Due Process Claim under the Fourth Amendment

In his second procedural due process claim, the Plaintiff alleges that the Defendants

violated his due process rights under the Fourth Amendment. (Doc. 1, pp. 8-9). The Fourth

Amendment is applicable to the states through the Fourteenth Amendment. The Plaintiff argues

that his Fourth Amendment rights were violated through an unreasonable seizure of his property

---

[21]  The time period for Court Review of a decision is set forth in 42 Pa. C.S.A. § 5571(b),
and it states that "an appeal from a tribunal or other government unit to a court or from a court
to an appellate court must be commenced within 30 days after the entry of the order from
which the appeal is taken, in the case of an interlocutory or final order."

[22]As Plaintiff indicates in his Brief (Doc. 34, p. 32), since the Court will grant his
Summary Judgment Motion with respect to his Fourth and Fourteenth Amendment procedural
due process claims, the Court will permit limited discovery with respect to the damages Plaintiff
is entitled regarding these claims.  At the conclusion of the discovery on the damages issues, the
Court will schedule a pre-trial conference to set a trial on the damages issues.

by the Defendants. (Doc. 34, p. 26).  Both parties concede that the demolition of the building amounts to a seizure of property under the Fourth Amendment, but they disagree if it was reasonable under the circumstances. (Doc. 34, p. 26 and Doc. 28, p. 15).

The issue of reasonableness of a seizure involves weighing several factors, which could include the danger posed by a damaged building to public safety. (Doc. 34, p. 26).  See *Soldal v. Cook County*, 506 U.S. 56, 62, 113 S.Ct. 538, 121 L.Ed. 2d 450 (1992).  The Plaintiff admits that when a building is condemned for the danger it poses to the public, when proper notice is given to the owner, and when  adequate recourse is given to challenge any actions taken by local government, the demolition of a building is not unreasonable. *(Id.)*  But the Plaintiff argues that this scenario did not occur in the instant case, and he contends that the seizure of his building by the City was not reasonable under the present circumstances.

One test for reasonableness is a City's adherence to its own ordinances and procedures so as to preclude the ordering of the landowners to abate their nuisance structures. *Freeman v. City of Dallas*, 242 F.3d 642, 652-55 (5th Cir. 2001).  The *Freeman* Court also held that a state officer will not violate the Fourth Amendment when he acts in emergency situations. *Id.* at 655 (citing *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 539, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).  Therefore, if the action taken by the Defendants was taken in an emergency situation or their actions adhered to their own ordinances or procedures, their actions would not violate the Fourth Amendment. In addition, the Defendants point out that the failure to obtain a warrant for the seizure does not make the seizure unreasonable *per se. (See Gardener v. McGroarty*, 68 Fed. Appx 307, 312 (3d Cir. 2003); *Freeman*, 242 F.3d at 655.).

31

It is undisputed that the City did not attempt to get a warrant in our case. (Doc. 28, p. 16).

If it is found that there was not an emergency situation, in any case, the Defendants argue that they acted reasonably under the circumstances and that they followed the procedures set forth in the City's BOCA Code. (Doc. 28, p. 18).  The Defendants argue that the Fourth Amendment, at its core, prevents arbitrary seizures, and they contend that they did not violate the Fourth Amendment because the seizure of the Plaintiff's property was not arbitrary; rather, it was based on the BOCA Code that the City adopted as its law. (*Id.*).

In the alternative, the Defendants maintain that their decision to classify the Plaintiff's property as imminently dangerous was consistent with the City's Property Maintenance Codes, and it created an "emergency" as a matter of law. (Doc. 28, p. 16).  *See Gardner*, 68 Fed Appx. at 312 (holding that the building's lack of heat rendered it unfit for human habitation under the local housing codes, an emergency existed as a matter of law that justified the government's seizure of the building). The Defendants contend that since an emergency existed as a matter of law, their actions did not violate the Fourth Amendment, which they state is supported by the *Freeman* Court's reasoning. (Doc. 28, p. 17).  The Defendants argue that when the two fires occurred in the Plaintiff's building, they created a scenario that justified the seizure of the building as an emergency action. (*Id.*).  *See Gardner,* 68 Fed. Appx. at 312 (citing Freeman 242 F.3d at 651) (stating that "where a building is seized because of the danger that it poses and adequate recourse is provided to challenge any action taken by the local government, the seizure does not violate the Fourth Amendment").

The Plaintiff argues that the Defendants did not act in an "emergency" situation and that the evidence shows that there was not an immediate risk.  The Plaintiff points out that the Defendants did not put his building on the schedule for demolition until July 2005 that it was to be demolished sometime during the summer of 2005, despite issuing the initial notice on December 22, 2004. (Doc. 34, p. 29). The Plaintiff correctly states that it took approximately fifteen (15) months from the first notification until his Appeals Hearing with the City to reach the decision to condemn his building, which is not indicative of an emergency. (Doc. 34, pp. 20-21).

Plaintiff states that the undisputed evidence is sufficient to lead a reasonable trier of fact to believe that it was not an "emergency" situation that existed which warranted the demolition of his building without allowing him an appeal of the Appeals Board's decision to the County Court of Common Pleas. (Doc. 34, p. 29). The Plaintiff asserts that since this action was not an emergency, he should have been given his full right to appeal the March 7, 2006 decision of the Housing Appeals Board.  Therefore, Plaintiff concludes that, based on all of the circumstances, the City did not act reasonably in seizing his property.  (*Id.* at 29-30).

We find that the undisputed evidence shows that there was no emergency situation that justified Defendants' seizure of Plaintiff's building.  While the Plaintiff's building had two fires, Mr. Popple testified at the March 7, 2006 Appeals Hearing that Plaintiff's building was watertight, and that there was nothing to cause decay in its structure which would cause the building to collapse. Mr. Popple said the roof on Plaintiff's building was in fairly good shape and the exterior was "in excellent condition." (Doc. 30, Ex. G, pp. 14-15).  Moreover, based on the

undisputed fact that the City had waited about 15 months since the issuance of the first notice until the March 7, 2006 Appeals Hearing, it can hardly be said that an "emergency" existed and exigent circumstances existed that justified the City's seizure of Plaintiff's building just six days after his Appeals Board Hearing.

Accordingly, we will grant Plaintiff's Summary Judgment Motion with respect to his Fourth Amendment due process claim. We will deny Defendants' Summary Judgment Motion with respect to the stated Fourth Amendment claim.[23]

### C. Municipal Liability Claim Against the City Based on Monell

The Court finds that Plaintiff has alleged a *Monell* municipal liability claim as against Defendant City of Scranton (Doc. 1, pp. 6-10), but that he has not established such a claim by his evidence. When a claim against a municipality or governmental entity, such as the Defendant City, is based on §1983, the entity can only be liable when the alleged constitutional violation implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). A governmental custom for purposes of Section 1983 is defined as "such practices of state officials...[as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691. Custom can be shown by evidence of knowledge and acquiescence by high-level policy-makers. *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). The court must then inquire "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

---

[23]As noted, the Court will permit discovery on the damages issue.

deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  The policy must be the "moving force" behind the constitutional violation.  *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion)).

In this case, with respect to the Plaintiff's § 1983 claim against Defendant City, the Plaintiff alleges in his Complaint that the alleged actions of Defendants which resulted in the seizure and demolition of his Larch Street building were arbitrary and "based upon personal criteria and animosity, and the policy currently existing within Defendant, City of Scranton, does exist and operate without benefit of authority of law ... ."  (Doc. 1, p. 10, ¶ 27.).  Thus, Plaintiff claims that the Defendant City had a policy of taking the properties and businesses of landowners in the City without notice, hearing or court adjudication in violations of the civil rights of the landowners.    Plaintiff avers that Defendant City, along with Defendants Mayor Doherty and Fiorini, violated his Constitutionally protected right  to due process before his property could be taken and demolished by the City.

"A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and injuries suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). The law is clear that liability will not be imposed under § 1983 on a *respondeat superior* or vicarious liability theory.   *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991).

"Policy is made when a 'decision maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.  A course of

conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

The Court in *Stoneking v. Bradford Area School District*, 882 F.2d 720, 725 (3d Cir. 1989), held that liability for state officials can arise "from their policies maintained in deliberate indifference to action taken by their subordinates."   According to *Stoneking*, "a plaintiff must do more than show the defendant could have averted her injury and failed to do so.  In order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the [harm] and that the defendant acted with deliberate indifference to that [harm].  In order to establish deliberate indifference on the part of the defendant, 'something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm' to plaintiffs." *Id.; Black by Black v. Indiana Area School District*, 985 F.2d 707, 712-13 (3d Cir. 1993) (quoting *Colburn*, 946 F.2d at 1025).

While the Defendants argue that the City should not be liable under §1983 because there is no evidence to support the Plaintiff's *Monell* claim of municipal liability (Doc. 28, p. 18), this Court can consider the policy and customs the City uses when enforcing its Property Code to determine if Plaintiff has established a claim against the City under §1983. *(See Monell v. NY Dept. of Soc. Serv.*, 436 U.S. 685, 691-695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).).

The Defendants argue that there is no evidence that the "City of Scranton has a policy or custom of encouraging or training  its employees to ignore the process that is outlined in the

violation notice." (Doc. 28, p. 19).  To establish that a policy is in violation of the constitution, a single incident by a municipal employee is insufficient to establish that an official custom or practice caused the alleged constitutional violation.  *Oklahoma City v. Tuttle*, 471 U.S. 808, 822, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

The Plaintiff argues that the testimony of Defendant Fiorini at the March 7, 2006 Appeals Hearing explained in detail the policy the City employs with respect to vacant properties.[24]  The Plaintiff contends that the policy of the City, based on Fiorini's testimony, is to demolish vacant buildings whether or not the property is structurally sound, and whether or not it poses a threat to the public.  (Doc. 34, pp. 30-31).

Plaintiff contends that based solely on the testimony of Fiorini, "it is clear that it is the custom and policy of the City of Scranton to demolish vacant buildings whether or not the property is structurally sound or whether or not it poses a threat to the public." (Doc. 34, p. 31).  Plaintiff s submits that he is entitled to the grant of his Summary Judgment Motion with respect to his Fourth Amendment claim against the Defendant City. (*Id*.).

Defendants first argue that if there is no constitutional violation established by Plaintiff, there can be no § 1983 cause of action against the City with respect to Plaintiff's *Monell* claim against it regarding its policy and custom of enforcing its Property Maintenance Code. (Doc. 28, pp. 18-19).  Since the Court has already found violations of Plaintiff's Fourteenth Amendment and Fourth Amendment procedural due process rights by Defendant Fiorini, Defendants' first

---

[24]*See* Doc. 30, Ex. G, pp. 12-13, for Defendant Fiorini's March 7, 2006 Appeals Hearing testimony.

contention fails.

Alternatively, Defendants argue that the City is entitled to summary judgment even if a constitutional violation is found as against the individual Defendants since Plaintiff has not established that the violations resulted from a municipal custom or policy as required by *Monell*. (Doc. 28, p. 19).

The Court agrees with Defendants' alternate argument with respect to Plaintiff's *Monell* claim against the City, and finds that "there is no evidence that the City of Scranton has a policy or custom of encouraging or training its employees to ignore the process that is outlined in the violation notice." (*Id.*, p. 19). The Court finds that Defendant Fiorini's stated testimony at the Appeals Hearing (Doc. 30, Ex. G, pp. 12-13) is not sufficient evidence to support Plaintiff's *Monell* claim against the City. In his testimony, Fiorini was clearly referring to what the City does after a property is legally condemned and the owner is given notice to either rehabilitate the property or notice that the property will be demolished. (Doc. 30, Ex. G, p. 13).

As stated, we agree with Defendants and find that the Plaintiff does not bring forth evidence of situations similar to the present case to establish that there is an existing policy of the City to violate the Fourth Amendment rights of other property owners in the City with respect to its enforcement of its Property Maintenance Code. (Doc. 28, p. 19). The Plaintiff's sole reliance on Defendant Fiorini's testimony at the March 7, 2006 Appeals Hearing is insufficient to establish his municipal liability claim against the City.

Therefore, Defendants' Summary Judgment Motion regarding the § 1983 municipal liability claim against the Defendant City will be granted, and Plaintiff's Summary Judgment

Motion with respect to this claim will be denied.

*D. Defendants' Immunity on Plaintiff's Punitive Damages Claim*

The Plaintiff's Complaint requests punitive damages against the three named individual Defendants, as well as against the Defendant City. (Doc. 1, p. 12, ¶ B.).  As stated above, the law is clear that municipalities cannot be liable for punitive damages under §1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).  Since municipalities are not liable for violations under §1983, the Defendants' summary judgment motion with respect to the punitive damages claim against the City of Scranton shall be granted.[25]

Thus, Plaintiff cannot seek punitive damages as against Defendant City.  (Doc. 1, p. 12). As the Court stated in *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 281-282 (E.D. Pa. 2001), "municipal entities are immune from punitive damages under Section 1983." (citation omitted). Thus, judgment for Defendant will be entered with respect to Plaintiff's claim for punitive damages as against Defendant City.  Further, since we have found that Plaintiff has not established a  municipal liability claim against Defendant City, we shall grant Defendants' Summary Judgment  Motion with respect to the Plaintiff's claim against the City.

Further, to the extent that Plaintiff has sued the two individual Defendants in both their individual and official capacities, he cannot obtain punitive damages against these Defendants in their official capacities. *DeBellis*, 166 F. Supp. 2d at 281-282 (citation omitted).  Plaintiff can

---

[25]In any event, the Court is granting Defendant's Summary Judgement Motion with respect to the municipal liability claim against the defendant City.

39

request punitive damages under his §1983 claims as against the two individual Defendants in their personal capacities. *Id*.  However, since Defendant's Summary Judgement Motion will be granted with respect to all claims against Defendant Doherty, Plaintiff cannot recover any damages against this Defendant, either in this Defendant's personal or official capacity.

As previously discussed, the Court has agreed with Defendants that no evidence was presented to show that Mayor Doherty played any personal role with respect to the constitutional claims raised in this case.  (Doc. 28, p. 14, n.5).  The absence of any personal involvement in this case entitles the Defendant Mayor to summary judgment with respect to all claims against him. Thus, the Plaintiff's punitive damages claim against Defendant Doherty, to the extent that it can be asserted in his personal capacity, cannot proceed.

In regards to the immunity of Defendant Fiorini from punitive damages, the Supreme Court has allowed punitive damages to be awarded against municipal officials as individuals, in an effort to deter them from future constitutional violations. *City of Newport*, 453 U.S. at 632-633.  *See also, Smith v. Wade*, 461 U.S. 30, 35-36, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Therefore, the Court finds that Defendant Fiorini can be held liable, in his personal capacity, for punitive damages with respect to Plaintiff's Fourth Amendment and Fourteenth Amendment procedural due process claims, for which summary judgment will be entered in Plaintiff's favor.

**VI. Conclusion.**

Based on the foregoing, the Court will grant the Defendants' Motion for Summary Judgment in regards to the Plaintiff's substantive due process claim under the Fourteenth Amendment against all Defendants. Further, the Court will grant Defendants' Summary

Judgment Motion with respect to all claims asserted against Defendant Mayor Doherty due to the lack of evidence of his personal involvement.  The Defendants' Summary Judgment Motion will be granted with respect to all *Monell* claims asserted against the City of Scranton.  Further, Defendants' Summary Judgment Motion will be granted with respect to Plaintiff's claim for punitive damages as against Defendant City and against Defendant Doherty and Defendant Fiorini in their official capacitates.

The Plaintiff's Summary Judgment Motion will be granted with respect to his claims for violation of his procedural due process rights under the Fourth and Fourteenth Amendments against Defendant Fiorini.  The Court also finds that Defendant Fiorini can be held liable for punitive damages in his personal capacity, since Plaintiff has shown that he violated the Plaintiff's procedural due process rights that were guaranteed by the Fourth and Fourteenth Amendments.

An appropriate Order and Judgment will follow.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 10 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD PARA, | : | CIVIL ACTION NO. **3:CV-06-2432** |
| | : | |
| Plaintiff | : | |
| | : | Magistrate Judge Blewitt |
| v. | : | |
| | : | |
| CITY OF SCRANTON, | : | |
| WILLIAM J. FIORINI and | : | |
| CHRIS A. DoHERTY, | : | |
| | : | |
| Defendants | : | |

## ORDER AND JUDGMENT

**AND NOW,** this 10th day of **July, 2008,** based upon the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion for Summary Judgment **(Doc. 24)** is **GRANTED** in regards to the Plaintiff's substantive due process claim under the Fourteenth Amendment and against all Defendants.

2. Defendants' Summary Judgment Motion **(Doc. 24)** is **GRANTED** with respect to all claims asserted against Defendant Mayor Doherty due to the lack of evidence of his personal involvement.

3. Defendants' Summary Judgment Motion **(Doc. 24)** is **GRANTED** with respect to all *Monell* claims asserted against the Defendant City of Scranton.

4. Defendants' Summary Judgment Motion **(Doc. 24)** is **GRANTED** with respect to Plaintiff's claim for punitive damages against the Defendant City of Scranton and as against Defendant Doherty and Defendant Fiorini in their official capacities.

5.  Plaintiff's Summary Judgment Motion **(Doc. 29)** is **GRANTED** with respect to his claims for violation of his procedural due process rights under the Fourth and Fourteenth Amendments against Defendant Fiorini.

6.  Defendant Fiorini can be held liable for punitive damages in his personal capacity, since Plaintiff has shown that he violated the Plaintiff's procedural due process rights that were guaranteed by the Fourth and Fourteenth Amendments.[26]

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 10, 2008**

---

[26]The Court will issue a separate order allowing limited discovery on the damages issues and will then set a pre-trial conference regarding these issues.